[Cite as *State v. Ojile*, 2017-Ohio-9319.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160425 |
| | | TRIAL NOS. B-1007149-C |
| Respondent-Appellee, | : | B-1006797-C |
| vs. | : | *O P I N I O N.* |
| UGBE OJILE, | : | |
| Petitioner-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment in B-1007149-C is:      **Affirmed**
Judgment in B-1006797-C is:      **Affirmed in Part, Reversed in Part, and Cause Remanded**

Date of Judgment Entry on Appeal:  December 29, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.,* Assistant Prosecuting Attorney, for Respondent-Appellee,

*The Olawale Law Firm, LLC*, and *Emmanuel Olawale*, for Petitioner-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} Petitioner-appellant Ugbe Ojile appeals the denial of his petitions pursuant to R.C. 2953.21 et seq. for postconviction relief. We hold that Ojile was entitled to a hearing on the first ground for relief advanced in the petition filed in the case numbered B-1006797, challenging his trial counsel's effectiveness in establishing his alibi for the aggravated robbery charged in count three of the indictment in that case. For that reason, we reverse in part the judgment entered in that case denying his petition.

{¶2} In 2011, Ojile was convicted on multiple counts of aggravated robbery, robbery, conspiracy to commit aggravated robbery, and complicity to robbery. Following his resentencing in 2013 upon our remand in his direct appeals, he stood convicted on four counts of aggravated robbery, five counts of complicity, and a single count of conspiracy. *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, *appeal not accepted*, 135 Ohio St.3d 1414, 2013-Ohio-1622, 986 N.E.2d 30.

{¶3} In 2012 and in 2016, in each of the cases numbered B-1007149-C and B-1006797-C, Ojile filed with the common pleas court a postconviction petition. On appeal from the denial of Ojile's 2012 petitions, we affirmed the common pleas court's judgments. *State v. Ojile*, 1st Dist. Hamilton No. C-120601 (June 12, 2013). In this appeal from the court's judgments dismissing Ojile's 2016 petitions, he presents two assignments of error, challenging the dismissal of those petitions for lack of jurisdiction and the court's failure to conduct an evidentiary hearing. We address the assignments of error together and sustain them in part.

2

*The Trial*

{¶4}  Ojile, Amy Hoover, and Kenyatta Erkins were indicted on multiple counts of aggravated robbery, robbery, conspiracy to commit aggravated robbery, and complicity to robbery, following an investigation by the Cincinnati Police Department and other local police agencies into reports that patrons of two gambling casinos had been followed from the casinos to their homes and robbed at gunpoint. The relevant charges here are contained in count three of the indictment in the case numbered B-1006797-C, charging Ojile, Hoover, and Erkins with the February 2009 aggravated robbery of Michael Weisbrod, and in counts 12 and 14 of the indictment in the case numbered B-1007149-C, charging Ojile and Erkins with the April 2010 aggravated robbery of Daniel Duncan and the June 2010 aggravated robbery of Tien Dao. Ojile and Erkins were tried together to the court. Hoover had accepted a plea offer of case consideration in exchange for her testimony at their trial.

{¶5}  At trial, Michael Weisbrod testified that he had left a casino on February 9, 2009, in possession of over $8,000 in cash and returned to his apartment in the early morning hours of February 10. Video from the casino's security camera showed Erkins following Weisbrod that night. After Weisbrod had returned home, a woman knocked on his door and asked him if anyone was living in the apartment downstairs. Through the closed door, Weisbrod told her, "No," and she left. On the night of February 10, a man came to Weisbrod's door, asked the same question, and received the same response. Then, on February 11, at around 9:00 p.m., Weisbrod was in the basement of his apartment building, checking for the cause of a power outage in his apartment, when he was confronted by a man and a woman who told him that they were armed, tied him up, and ordered him to tell

3

them where the money was. The robbers left with more than $8,000 in cash, along with Weisbrod's cell phone, wallet, and car keys. In April, Weisbrod was again robbed of over $8,000 after a night at the casino, this time by two armed men who relieved him of his wallet and cash as he was returning to his apartment. From a news report when Ojile, Erkins, and Hoover were arrested six months later, Weisbrod identified Hoover as the woman who had knocked on his door before the February robbery and Ojile and Erkins as the men who had robbed him in April. At trial, Hoover testified that she had been the woman who, on February 10, came to Weisbrod's door, while Erkins and Ojile waited in the car, and that the three of them had returned to the apartment building on the night of February 11 and robbed Weisbrod. The state also presented at trial the testimony of Tyrone Tanks, who had been confined with Ojile in the Hamilton County Justice Center. Tanks testified that Ojile had provided him with a detailed account of the February 11 robbery.

{¶6}   In April 2010, an armed man whose face was concealed with a bandana relieved Daniel Duncan of approximately $1,250 in cash and his .40-caliber Glock handgun, along with the Smith and Wesson ammunition that he carried for the gun. When Ojile and Erkins were apprehended in October 2010, police found sitting on the floor of Erkins's car, between Ojile's legs, a backpack containing Duncan's gun and ammunition, along with personal papers belonging to Ojile. Tanks testified that Ojile had admitted to his involvement in a robbery during which he had stolen the victim's gun.

{¶7}   In June 2010, two armed men relieved Tien Dao of his wallet after he had returned home from a casino. Security-camera video showed Erkins following Dao as he left the casino. Contents of Dao's wallet, including two California driver's

licenses, a social security card, and a credit card, were recovered by police in a search of Ojile's apartment after his arrest. Tanks testified that Ojile had admitted to his involvement in a robbery in which the victim's California driver's license had been found in his apartment.

### *The Postconviction Petitions*

{¶8}    To prevail on a postconviction claim, a postconviction petitioner must demonstrate a denial or infringement of his rights during the proceedings resulting in his conviction that rendered that conviction void or voidable under the Ohio Constitution or the United States Constitution. R.C. 2953.21(A)(1). The petitioner bears the initial burden of demonstrating, through the petition, any supporting affidavits, and the record of the case, "substantive grounds for relief." R.C. 2953.21(C).

{¶9}    A postconviction claim is subject to dismissal without a hearing if the petitioner has failed to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. *Id.*; *State v. Pankey*, 68 Ohio St.2d 58, 428 N.E.2d 413 (1981); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980). Conversely, "the court must proceed to a prompt hearing on the issues" if the petition, affidavits, and record "show the petitioner is * * * entitled to relief." R.C. 2953.21(E).

{¶10}  The 2016 postconviction petitions from which this appeal derives were filed well after the time prescribed by R.C. 2953.21(A)(2) had expired. R.C. 2953.23 closely circumscribes a common pleas court's jurisdiction to entertain a late or successive postconviction claim. The petitioner must show either that he was unavoidably prevented from discovering the facts upon which his postconviction

5

claim depends, or that his claim is predicated upon a new and retrospectively applicable right recognized by the United States Supreme Court since the time for filing his claim had expired. R.C. 2953.23(A)(1)(a). And he must show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found [him] guilty of the offense of which [he] was convicted." R.C. 2953.23(A)(1)(b).

{¶11} The common pleas court dismissed Ojile's 2016 postconviction petitions for lack of jurisdiction, upon its determination that Ojile had failed to meet R.C. 29153.21(A)'s time restrictions or to satisfy R.C. 2953.23's jurisdictional requirements for entertaining a late or successive petition. We hold that the court did not err in concluding that it lacked jurisdiction to entertain the second and third grounds for relief presented in the petitions, but that the court erred in declining to entertain or conduct a hearing on the first ground for relief.

{¶12} *Ineffective assistance of trial counsel in presenting alibi.* In his first ground for relief, Ojile challenged his trial counsel's effectiveness in preparing and presenting his alibi to the robbery of Michael Weisbrod on the night of February 11, 2009. Ojile argued that counsel had not functioned as the counsel guaranteed under the Sixth Amendment to the United States Constitution, when counsel had subpoenaed and presented to the court documents to demonstrate his presence in New York that night, but failed to investigate, or to call a witness to testify to, the meaning of those documents. We conclude that the common pleas court erred in dismissing this claim without an evidentiary hearing.

{¶13} Ojile was charged in count three of the indictment in the case numbered B-1006797-C with the February 11, 2009 aggravated robbery of Weisbrod.

Prior to trial, his trial counsel subpoenaed, and then presented in support of Ojile's notice of alibi, a four-page document that purported to "confirm[]" Continental Airlines's issuance on February 11, 2009, of an "eTicket" to Ojile for a flight on February 12 departing Newark International Airport at 8:57 a.m. and arriving in Cincinnati at 11:24 a.m. Counsel asserted in the notice of alibi that this documentation showed that Ojile had been "in New York City on February 11, 2009 at the time of the alleged offense," and that he "could [not] have been present in Cincinnati at 9:10 P.M. on February 11, 2009 and been in New York the following morning checking in [for the 8:57 a.m. Newark flight]."

{¶14} Three weeks later, counsel subpoenaed from Continental "boarding and flight information" for Ojile for February 11 and 12, 2009. A week later, counsel received in return 11 pages of internal ticketing-and-tracking records for those dates, certified as accurate by the airline's records custodian.

{¶15} That same day, after the defense had rested, Ojile's counsel moved those records into evidence, and they were admitted, as a defense exhibit in support of Ojile's alibi for the February 11 aggravated robbery. The state stipulated to their authenticity, but disputed defense counsel's assertion that the records "also include flight coupons, which indicate somebody boarded a flight." The assistant prosecuting attorney argued that the records did not "indicat[e] [Ojile] was ever on any of these flights," and that "[it was] apparent he couldn't have been on all of them because some of [them] contradict each other." Then, in closing, the assistant prosecuting attorney argued that Ojile's culpability in the February 11 robbery had been proved by the trial testimony of Hoover and Tanks. Defense counsel, in closing, argued that Weisbrod had testified that only two people, a woman and a man, had

robbed him on February 11, and that Continental's records showed that "Ojile got on a flight on the 11th, returned back here on the 12th."

{¶16} Before the trial court returned with its findings, defense counsel moved for acquittal on the February 11 aggravated robbery under Crim.R. 29, arguing that Weisbrod had testified to only two assailants, and Ojile had proved his alibi. On the same day, Ojile filed a pro se motion for a new trial, contending that the evidence had been insufficient to prove his involvement in that robbery, that the state had elicited perjured testimony from Hoover, and that Tanks's testimony to Ojile's incriminating statements had been elicited from him in violation of his right to counsel. The trial court did not rule on the pro se new-trial motion and effectively overruled the Crim.R. 29 motion when it found Ojile guilty on the charge.

{¶17} In his direct appeal, Ojile presented various challenges to his conviction in the February 11 aggravated robbery. In overruling an assignment of error challenging the sufficiency of the evidence supporting that conviction, we dismissed as irrelevant Ojile's argument that Tanks's and Hoover's testimony had not been credible, because that argument went to the weight of the evidence, not its legal sufficiency, and was thus a matter to be determined by the trial court, sitting as the trier of fact. *Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, at ¶ 56.

{¶18} We also overruled an assignment of error contending that that conviction had been secured through the state's use of perjured testimony by Hoover, because we found that her testimony had not been demonstrably false. We determined that the trial court "could reasonably have found that Weisbrod had been mistaken about the number of attackers," when the robbery had occurred in

8

complete darkness. And we deemed inconclusive the alibi evidence that Ojile "had purchased tickets on [a] flight out of Ohio on the day in question," when Ojile had not presented "any evidence that he was actually on the flight," and Tanks had testified that Ojile had confessed "to us[ing] the plane tickets to create a false alibi." *Id.* at ¶ 79-82.

{¶19} Finally, we overruled an assignment of error challenging the admissibility of Tanks's testimony to Ojile's incriminating statements on the ground that his statements had been elicited in violation of his right to counsel. We noted Ojile's inability to identify what statements Tanks had elicited after he had allegedly begun acting as an agent of the state. And we concluded that Tanks's testimony, even if "improper," could not be said to have been "prejudicial in the overall context of the trial given the overwhelming evidence against Ojile." *Id.* at ¶ 69-72.

{¶20} Two months after we decided the direct appeal, Ojile raised for the first time his trial counsel's effectiveness in preparing and presenting his alibi for the February 11 aggravated robbery. In a timely filed App.R. 26(B) application to reopen his direct appeal, Ojile asserted that his appellate counsel had been ineffective in not assigning as error his trial counsel's ineffectiveness in failing to call as a witness the records custodian for Continental Airlines to explain how the ticketing-and-tracking records proved that Ojile had been on the February 11 and 12 flights. Reopening was denied on that ground, presumably because the challenge to trial counsel's ineffectiveness depended for its resolution upon evidence outside the trial record and was thus appropriately raised in a postconviction petition.

{¶21} In his timely filed 2012 pro se postconviction petition, Ojile renewed his perjured-testimony and right-to-counsel challenges. The only evidence outside of

9

the trial record offered in support of those claims was Ojile's affidavit, in which he averred that he had "caught a plane from Cincinnati to Newark, New Jersey on February 11th 2009 * * * and returned on a flight back the next day on February 12th 2009." Otherwise, his perjured-testimony claim relied on the 11-page ticketing-and-tracking records admitted at trial and his argument that those documents "show[ed] defendant boarded and was lifted on both flights." We affirmed the common pleas court's denial of those postconviction claims upon our determination that the court was bound under the doctrine of the law of the case by the law of our decision in the direct appeal, because the postconviction claims involved substantially the same facts and issues raised and rejected in the direct appeal. *Ojile*, 1st Dist. Hamilton No. C-120601.

{¶22} In the first ground for relief advanced in the late and successive postconviction petitions from which this appeal derives, Ojile challenged his trial counsel's effectiveness in presenting his alibi for the February 11 aggravated robbery. To avoid dismissal of his ineffective-counsel claim without a hearing, he bore the initial burden of demonstrating substantive grounds for relief. R.C. 2953.21(C). Thus, he had the burden of producing evidence outside the trial record that, along with the matters contained in that record, showed that his trial counsel's performance had fallen below an objective standard of reasonableness, and that counsel's deficient performance had prejudiced him, *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), that is, that counsel's deficient performance had "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result." *State v. Powell*, 90 Ohio App.3d 260, 266,

629 N.E.2d 13 (1st Dist.1993), citing *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), and *Strickland* at 694. And because his ineffective-counsel claim was presented in a late and successive postconviction petition, the common pleas court had jurisdiction to grant Ojile relief on that ground only upon proof that he had been unavoidably prevented from discovering the facts upon which that claim depended, and that, but for trial counsel's ineffectiveness, no reasonable factfinder would have found him guilty of the February 11 aggravated robbery. *See* R.C. 2953.23(A)(1)(b).

{¶23} In support of his ineffective-counsel claim, Ojile offered outside evidence in the form of two affidavits made by the records custodian of United Airlines, which had succeeded Continental Airlines when the companies merged in 2011. In her affidavits, the records custodian explained that the Continental ticketing-and-tracking records admitted at trial, while "not * * * readily comprehensible by those outside the [airline]," confirmed that on February 11, 2009, Ojile had travelled from Cincinnati to Newark on a flight departing at 11:59 a.m. and arriving at 1:54 p.m., and that he had returned the next day on a flight from Newark to Cincinnati departing at 8:57 a.m. and arriving at 11:24 a.m. That evidence, Ojile asserted, proved his alibi for the February 11 aggravated robbery and thus showed outcome-determinative ineffectiveness on the part of trial counsel in failing to present that evidence in support of the alibi.

{¶24} To demonstrate his diligence in attempting to discover the facts upon which his ineffective-counsel claim depended, Ojile submitted two affidavits, along with documents supporting the averments of those affidavits. He averred that he had first initiated efforts to secure from Continental conclusive evidence

demonstrating his alibi in October 2011, when he began serving his prison time, by sending a letter to the airline's legal department. The evidence further shows that, in May 2012, after he had applied to reopen his direct appeal on the ground of trial counsel's ineffectiveness, and with the postconviction filing deadline looming, Ojile again wrote to the airline. In that letter, he stated that the 11-page ticketing-and-tracking records had not been "self-explanatory, and needed interpretation," and that he "need[ed] * * * better confirmation to prove that [he] was on those flights." He again sent that letter in August 2013, following our June 2013 decision affirming the denial of his 2012 postconviction petition. The former Continental, now United, employee to whom Ojile had addressed his letters replied a month later with the records custodian's first affidavit. The second, more detailed affidavit, made in September 2014, was secured through efforts by the attorney from the Office of the Ohio Public Defender who had been assigned Ojile's case.

{¶25} Ojile had also secured, in October 2013, an affidavit made by Erkins exonerating him in the Duncan robbery. And Ojile had discovered additional evidence in the spring of 2014 concerning previously-undisclosed details about Tanks's plea agreement with federal prosecutors. He offered that evidence in support of his challenges in all three postconviction claims to the credibility of Hoover and Tanks and to Tanks's motives for testifying against Ojile at trial. Finally, Ojile provided a detailed accounting of his and his postconviction counsel's efforts, after securing the records custodian's second affidavit, to gather evidence, review the record (including trial counsel's file, which was not received until April 2015), and file his second postconviction petition.

{¶26} To prove Ojile's alibi in the February 11 aggravated robbery, that he was in New York at the time, it was incumbent upon trial counsel to present evidence to counter Tanks's testimony that Ojile had confessed to purchasing airline tickets to create a false alibi for the robbery and the state's argument that the 11-page ticketing-and-tracking records did not prove that Ojile had actually boarded the February 11 and 12 flights. Counsel failed to do so. But Ojile diligently pursued, and ultimately secured in the form of the September 2014 affidavit made by the United Airlines records custodian, evidence that may fairly be said to show that he had been in New York, not Cincinnati, on the night of the robbery.

{¶27} Our review of the trial record and Ojile's postconviction petition, along with the evidentiary material offered in support of the first ground for relief, persuades us that Ojile sustained his initial burden of submitting in support of that claim evidentiary material setting forth sufficient operative facts to demonstrate an outcome-determinative deficiency in his trial counsel's preparation and presentation of his alibi for the February 11 aggravated robbery. And we conclude that the common pleas court had jurisdiction to entertain Ojile's late and successive ineffective-counsel claim, when he supported that claim with evidence demonstrating that he had been unavoidably prevented from discovering the facts upon which the claim depended, within the time prescribed by R.C. 2953.21(A)(2) for filing a postconviction petition.

{¶28} We, therefore, hold that the court erred when it dismissed Ojile's ineffective-assistance claim for lack of jurisdiction and without an evidentiary hearing. Accordingly, we sustain in part the assignments of error.

{¶29} ***Brady* and right-to-counsel claims.** The remaining grounds for relief presented in Ojile's postconviction petition challenge Tanks's trial testimony to incriminating statements allegedly made to him by Ojile during their confinement in the Hamilton County Justice Center, concerning the aggravated robberies of Weisbrod, Duncan, and Tao. In his second ground for relief, Ojile contended that he had been denied a fair trial by the state's failure to disclose in discovery impeachment evidence contained in the sealed portion of a plea agreement between Tanks and federal prosecutors, which provided for a "downward departure" in Tanks's federal prison sentence in exchange for his "substantial assistance" in the prosecution of other offenders. In his third ground for relief, Ojile asserted that he had been denied his right to have counsel present at all critical stages of his prosecution, when Tanks had, after Ojile had been indicted, elicited those incriminating statements as an agent of the Office of the Hamilton County Prosecuting Attorney.

{¶30} The fair-trial guarantee of the Due Process Clause of the Fourteenth Amendment to the United States Constitution imposes upon the state a duty to disclose to a criminal accused evidence that is favorable and material to his guilt or punishment. *See Brady v. Maryland*, 373 U.S. 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This principle extends to evidence affecting a witness's credibility. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Undisclosed evidence is "material" if, "considered collectively," the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *See Kyles v. Whitley*, 514 U.S. 419, 434-436, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

{¶31} The Sixth Amendment secures to a defendant the right to have counsel present at all critical stages of criminal proceedings after "the adversary judicial process has been initiated." *Montejo v. Louisiana,* 556 U.S. 778, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009). The interrogation of a defendant by the state is a critical stage. *Massiah v. United States,* 377 U.S. 201, 204-205, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). And the right to counsel is denied when the state uses against the defendant at trial incriminating postindictment statements that were deliberately elicited in counsel's absence, by a known government officer or in the course of an "indirect and surreptitious interrogation" by a government agent or informant. *Id.* at 206. *See United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 63-70.

{¶32} As we noted, Ojile unsuccessfully challenged on direct appeal and in his 2012 postconviction petition the admission of Tanks's testimony concerning his incriminating statements. In his direct appeal, we noted that his argument that Tanks's testimony had not been credible was not pertinent to his challenge to the sufficiency of the evidence to support his conviction for the February 11 aggravated robbery of Weisbrod, because the matter of Tanks's credibility was for the trial court, sitting as the trier of fact. *Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, at ¶ 56. We also rejected in the direct appeal Ojile's right-to-counsel challenge to the admissibility of Tanks's testimony, upon our determination that that testimony, even if "improper," could not be said to have been "prejudicial in the overall context of the trial given the overwhelming evidence against Ojile." *Id.* at ¶ 69-72. And we applied the doctrine of the law of the case to affirm the denial of the

15

right-to-counsel claim presented in Ojile's 2012 postconviction petition. *Ojile*, 1st Dist. Hamilton No. C-120601.

{¶33} Ojile supported his 2016 postconviction *Brady* and right-to-counsel claims with outside evidence concerning the sealed portion of the plea agreement between Tanks and federal prosecutors. Ojile also argued in his petition that Erkins's statement in his affidavit that he alone had been responsible for the Duncan robbery, along with the other evidence supporting the petition's first ground for relief, undermines the credibility of Tanks's and Hoover's testimony to Ojile's involvement in the February 11 aggravated robbery. That outside evidence may fairly be said to have been unavoidably undiscoverable until well after the time prescribed by R.C. 2953.21(A)(2) for filing a postconviction petition had expired.

{¶34} But Ojile's convictions for the February 11 aggravated robbery of Weisbrod and the Duncan and Dao aggravated robberies were not wholly dependent on Tanks's trial testimony to Ojile's incriminating statements. Ojile was convicted for the Duncan and Dao aggravated robberies based not only on Tanks's testimony, but also on evidence that he had been found in possession of the fruits of those offenses. That evidence was not altered by the undisclosed or unavoidably undiscoverable evidence that, Ojile argued, required the exclusion of Tanks's testimony and undermined the credibility of his and Hoover's testimony. *See Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, at ¶ 56. Ojile's conviction for the February 11 aggravated robbery was based not just on Tanks's testimony, but also on the testimony of Hoover. Neither the *Brady* claim nor the right-to-counsel claim, even if demonstrated, would have required the exclusion of

16

her testimony. And the determination of whether her testimony had been credible was for the trial court, sitting as the trier of fact. *See id.* at ¶ 69-72.

{¶35} Ojile thus failed to show by clear and convincing evidence that, but for the *Brady* and right-to-counsel violations, no reasonable factfinder would have found him guilty in the Duncan or Dao aggravated robberies or in the February 11, 2009 aggravated robbery of Weisbrod. We, therefore, hold that the common pleas court had no jurisdiction to entertain those late postconviction claims. *See* R.C. 2953.23(A)(1)(b).

### *The Judgment in B-1006797-C is Reversed in Part*

{¶36} The common pleas court erred in dismissing for lack of jurisdiction and without an evidentiary hearing the first ground for relief presented in the 2016 postconviction petition filed in the case numbered B-1006797-C. We, therefore, reverse that part of the judgment entered in that case, and we remand for further proceedings consistent with the law and this opinion. In all other respects, we affirm the court's judgments.

Judgment accordingly.

MYERS, J., concurs.
MILLER, J., dissents.

Please note:

The court has placed of record its own entry in this case on the date of the release of this opinion.

17