**NOT RECOMMENDED FOR PUBLICATION**
File Name:  17a0189n.06

**No. 15-3942**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KENYATTA ERKINS, | ) | **FILED**<br>Mar 28, 2017<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| RICK CHUVALAS, Warden | ) | DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE:    GILMAN, GRIFFIN, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Kenyatta Erkins, convicted in Ohio state court of a string of robberies, appeals the district court's denial of his habeas corpus petition.  The district court issued a certificate of appealability on two issues:  (1) whether the prosecutor's display of a photograph of Erkins to victim Michael Weisbrod was impermissibly suggestive, rendering Weisbrod's in-court identification unreliable; and (2) whether the trial court violated due process by amending its journalized finding of guilt.  Erkins also asks the court to expand the certificate of appealability and consider an additional claim that the trial court's admission of Weisbrod's testimony by live videoconference violated the Sixth Amendment.  We conclude that none of these claims merit granting Erkins's habeas corpus petition, and thus we AFFIRM.

## I.  BACKGROUND

Erkins and Ugbe Ojile were indicted for a series of robberies involving patrons of Indiana casinos.  The indictments followed a lengthy investigation that uncovered a common method of operation (MO) by Erkins and Ojile that roughly fit the evidence regarding at least ten attempted or completed robberies.  *See State v. Erkins*, No. C-110675, 2012 Ohio App. LEXIS 4712, at **4–5 (Ohio Ct. App. Nov. 21, 2012).  Erkins would enter a casino and look for victims exiting with large amounts of cash who appeared to be vulnerable, while Ojile waited in a car in the parking lot.  As evidenced in some instances by recorded phone conversations and casino videotapes, Erkins would call Ojile to discuss potential targets and then follow the selected target out of the casino.  The two would follow the target home in one or two cars.  When the target exited his car, one or both assailants would approach at gunpoint and steal the victim's money and other valuables.  In some cases, Erkins or Ojile pushed the victims, slammed them to the ground, or beat them on the head with a gun.  Erkins and Ojile were arrested after targeting and following an undercover police officer to a gas station.

Erkins challenges his in-court identification by Michael Weisbrod, a professional poker player who was robbed on two separate nights.  In the first Weisbrod robbery, casino surveillance tapes showed Erkins following Weisbrod on February 9, 2009, after he won over $8,000.  After Weisbrod drove home, a woman knocked on his door to ask a question, and then left.  Two nights later, after the lights went out at his home, Weisbrod went downstairs to check his circuit breaker and was attacked, tied up with duct tape, and robbed in the dark by people he perceived to be a man and a woman.  At trial, Erkins's ex-girlfriend, Amy Hoover, testified that she, Erkins, and Ojile committed that robbery.  Less than two months after the first robbery, on a night when Weisbrod again won over $8,000, he was robbed a second time after driving home.  There was no video or audio captured relating to this second incident.  This time, according to

Weisbrod's live video testimony at trial, he was approached at his doorstep by two African-American men of medium build wearing hoodies and jeans. They pulled out a gun, threatened him, ordered him to get on the ground, reached into his pockets, took his wallet and cash, and fled in a white SUV. Weisbrod testified that his porch light was on, that the attackers' faces were not concealed, and that he got a good look at them. That night he had told the investigating officer, who also testified at trial, that he would be able to identify the suspects if he saw them again.

Six months after the second robbery, Weisbrod saw news reports about the suspects' arrests and recognized Erkins and Ojile (from the second robbery) and Hoover (from knocking on his door before the first robbery). In May 2011, over two years after both robberies, and two weeks before Weisbrod was scheduled to testify, Weisbrod met with the prosecutor in Cincinnati. The prosecutor showed Weisbrod photos of Erkins, Ojile, and Hoover and told him they were the people up for trial. Weisbrod responded: "Yeah, those were them." Two weeks later, Weisbrod testified at trial via tele-video from Canada. With the camera panning the room, Weisbrod identified Erkins and Ojile as the two men who robbed him on his doorstep.

Three other counts are relevant to this appeal. In Counts 22, 28, and 29, Erkins was charged with aggravated robbery. The Government later amended those counts to charges of robbery. On August 2, 2011, when announcing its findings after the bench trial, the trial court announced that Erkins was guilty of "conspiracy to commit robbery" for Counts 22, 28, and 29. The court's written findings, by contrast, listed Erkins as being found guilty of aggravated robbery on these counts, with no mention of conspiracy. On September 22, 2011, the court stated that the court "amended and corrected" the findings on these charges to "complicity to

robbery." The court's written findings were also amended to "complicity to robbery." When

announcing the amended findings, the court explained:

> I'm about to even make findings that are somewhat different than what I said originally, and that is because I was thinking certain things in my head but wrote out an incorrect section of the code. And because I also reviewed and did reconsider evidence and did make different – I'm going to make different findings.

R. 10-2, Trial Transcript, PageID 1833–34. In response to an objection, the court stated:

"[A]ctually, I'll say for the record, I was not changing my finding, I was correcting what offense

I was attempting to name on August 18th, and we wrote out conspiracy when, in fact, the

elements that I was relying upon are those that are under the complicity statute, 2923.03." *Id.* at

1837.

## II. ANALYSIS

### A. Standard of Review

This court may grant a petition for a writ of habeas corpus to a state prisoner if the state

court decision (1) was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the United States Supreme Court, or (2) was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding. 28 U.S.C. § 2254(d)(1); *see also Hodges v. Colson*, 727 F.3d 517, 525 (6th Cir.

2013) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). We apply this standard de novo

when reviewing a district court's decision on whether to grant a petition for a writ of habeas

corpus. *Nali v. Phillips*, 681 F.3d 837, 840 (6th Cir. 2012).

### B. In-Court Identification Following Suggestive Photograph

Identifications violate the Due Process Clause and must be excluded at trial if, under the

totality of the circumstances, the identification procedure was so unnecessarily suggestive that it

risked mistaken identification. *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005). We

"first assess whether the identification was unnecessarily suggestive, then assess whether the identification was nonetheless reliable," in which case it would be admissible despite the suggestive procedure. *Id.* The Supreme Court has listed five factors to consider in determining whether an identification was reliable under the totality of the circumstances: the witness's opportunity to view the criminal at the time of the crime; the witness's degree of attention at that time; the accuracy of the witness's prior description of the criminal; the witness's level of certainty at the identification; and the length of time between the crime and the identification. *Neil v. Biggers*, 409 U.S. 188, 200 (1972).

The Ohio Court of Appeals rejected Erkins's arguments that the prosecutor's display of a photograph of Erkins to Weisbrod two weeks before trial was unnecessarily suggestive and that Weisbrod's in-court identification was inadmissible. *Erkins*, 2012 Ohio App. LEXIS 4712, at **29–31. Although the Ohio court stated the correct legal standard in general, it did not list the specific *Biggers* factors, nor did it discuss the suggestiveness of the single photograph of Erkins that was displayed. *Id.* In its recitation of the facts supporting reliability, the court effectively addressed only the first *Biggers* factor (the witness's opportunity to view the criminal during the crime):

> The record shows that when Weisbrod was robbed the second time, it occurred in the well-lit parking lot of his residence. He was able to get a good look at the faces of his attackers. He told the investigating police officer that if he saw the attackers again, he would be able to identify them. Several months later, Weisbrod saw news reports about the arrest of Hoover, Erkins and Ojile, which displayed pictures of them. Weisbrod recognized them and was able to identify them to the police.

*Id.* at **30.

The district court determined that the Ohio court's finding of reliability was reasonable. It dismissed Erkins's argument that the Ohio court failed to apply the *Biggers* factors, finding

that the *Biggers* factors went to the weight of the identification evidence, not to its admissibility. As Erkins correctly argues on appeal, this was error. The *Biggers* factors are meant to determine reliability, and "reliability is the linchpin in determining the admissibility of identification testimony . . . ." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The *Biggers* factors thus determine admissibility, and both the Ohio courts and the district court should have analyzed them. If beginning the identification procedure by showing the single photograph of Erkins before trial was unnecessarily suggestive, and if application of the *Biggers* factors did not establish that the identification was nonetheless reliable, then the identification should have been excluded.

The prosecutor's display of Erkins's photograph to Weisbrod was unnecessarily suggestive. Only two weeks before trial, but two years after the crime, the prosecutor showed Weisbrod photos of Erkins and his co-defendants—without placing them in an array of other photos—and told Weisbrod that they were the people on trial. The Government has presented no justification or rationale for why this display might have been necessary. The Supreme Court has specifically recognized that the display of a single photograph to a witness creates a danger of misidentification. *Simmons v. United States*, 390 U.S. 377, 383 (1968). Although identifications based on single-photograph displays are not automatically excluded, they "may be viewed in general with suspicion," and merit moving to the second step: analysis of the *Biggers* factors. *Manson*, 432 U.S. at 116.

Analysis of the *Biggers* factors leads to mixed results. First, Weisbrod's opportunity to view the perpetrators weighs in favor of reliability. Although the robbery was brief and happened at night, Weisbrod testified that the area was well-lit and he got a good look at the robbers' faces, which were not concealed by their hoodies. Weisbrod told the police

immediately after the robbery that he would be able to identify the robbers if he saw them again. Besides the fact that it was nighttime, Erkins has presented no evidence to counter Weisbrod's testimony that the robbers' faces were visible during the crime and identifiable.

The second factor is the witness's degree of attention. Our cases acknowledge that "[t]here is a great potential for misidentification when a witness identifies a stranger based solely upon a single brief observation, and this risk is increased when the observation was made at a time of stress or excitement." *Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. 2001) (quoting *United States v. Russell*, 532 F.2d 1063, 1066 (6th Cir. 1976)). Weisbrod testified that the robbery was a "very, very traumatic experience." This factor weighs against reliability.

The third factor, the accuracy of the initial description, also weighs against reliability. Weisbrod told the police after the robbery that the robbers were "two male blacks, both in their 20s, with black hoodies on." This generic description only partially matches Erkins, a black man who was thirty-five years old at the time. In cases in which the Supreme Court has found that the accuracy of a prior description contributed to an identification's reliability, the prior description has included further details about the criminal's body or face. *See Biggers*, 409 U.S. at 194, 200–01; *Manson*, 432 U.S. at 115. The fourth factor, the certainty of Weisbrod's in-court identification, however, weighs in favor of its reliability. Weisbrod had always stated that he would be able to identify the robbers and at trial specified that he had no doubts that Erkins was one of his assailants. Finally, the two years between the crime and Weisbrod's in-court identification weighs heavily against its reliability. In *Biggers*, the Supreme Court noted that a lapse of seven months "would be a seriously negative factor in most cases." 409 U.S. at 201.

On balance, we think that the factors raise grave doubts about reliability given the lengthy time gap since the crime, the brief and stressed opportunity to view the perpetrators, the

generic description, and the fact that Weisbrod was likely influenced by having viewed Erkins in news reports before identifying him in court. As a federal court considering a state court's ruling for purposes of a habeas petition, however, our review is to determine whether the Ohio courts' conclusion on reliability was objectively unreasonable. The standard is a difficult one to satisfy: "A state adjudication is not 'unreasonable' 'simply because [a federal habeas court] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Howard*, 405 F.3d at 467 (quoting *Williams*, 529 U.S. at 411) (alteration in *Howard*).

The circumstances here are not so one-sided that it was objectively unreasonable for the Ohio courts to conclude that Weisbrod's identification was reliable. The Ohio courts' conclusion that Weisbrod's testimony was reliable is buttressed by the fact that he identified Amy Hoover as the person who knocked on his door, and Hoover confessed to doing so, indicating that other parts of Weisbrod's recollection of the robberies were accurate. Under the totality of the circumstances, we cannot say that the district court improperly dismissed this ground of Erkins's habeas petition.

### C. Trial Court's Amendment of Its Journalized Finding

Erkins argues that the trial court's initial announcement and journal entry finding Erkins guilty of crimes with which he was not charged violated his due process rights, and that the court's amendment of those findings subjected Erkins to double jeopardy. The Ohio Court of Appeals concluded that the trial court did not change its verdict, but merely corrected a clerical error, which was permissible under state law. *Erkins*, 2012 Ohio App. LEXIS 4712, at **28. This conclusion was reasonable. The trial court's initial announcement and journal entry appeared to be inadvertent and ultimately harmless misstatements of the crimes of which Erkins was found guilty. The amendments found Erkins guilty of the crimes on which the prosecution

had presented evidence. The court specifically stated that "I was not changing my finding, I was correcting what offense I was attempting to name on August 18th, and we wrote out conspiracy when, in fact, the elements that I was relying upon are those that are under the complicity statute." R. 10-2, Trial Transcript, PageID 1837. That statement makes clear that the court intended to find Erkins guilty of complicity to robbery during its initial announcement, and later corrected the journalized findings to match its original intention. Therefore, it was proper for the district court to dismiss this ground of Erkins's habeas petition.

### D.     Admission of Video Testimony

Erkins asks us to expand the certificate of appealability to address a third argument: that the trial court's admission of Weisbrod's testimony by live videoconference violated Erkins's Sixth Amendment right to face-to-face confrontation. We exercise our discretion to do so.

The Supreme Court has held that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured" and that the trial court must make a "case-specific finding of necessity" after "hear[ing] evidence." *Maryland v. Craig*, 497 U.S. 836, 850, 855, 858 (1990). There appears to be no record of the trial court considering any evidence or making a finding of necessity that would have permitted Weisbrod to testify by videoconference.

Erkins did not object to the testimony by video at trial, and he did not raise this argument on direct appeal, in his pro se petition for post-conviction relief in state court, or in his pro se habeas petition in federal court. Because Erkins defaulted this federal claim in state court, we may consider this issue on habeas review only if Erkins can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure

to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Erkins argues that his default was caused by his trial and appellate counsels' failure to object to the admission of Weisbrod's testimony, which rendered both attorneys constitutionally deficient. Constitutionally ineffective counsel may establish cause for a procedural default. *See id.* at 752–54. The failure to object would have been constitutionally ineffective if it were deficient and prejudicial, both of which are the defendant's burden to show. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A counsel's actions are deficient if they "were not supported by a reasonable strategy," *Massaro v. United States*, 538 U.S. 500, 505 (2003), and they are prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694.

Erkins argues that there was no reasonable strategic explanation for the failure to object to Weisbrod's testimony. The Supreme Court has made clear that while physical, face-to-face confrontation at trial is not indispensable, the Sixth Amendment permits an alternative "only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850. Given the lack of evidence that the trial court made the required case-specific finding of necessity, and the Government's lack of response to this argument, we assume without deciding that there was no reasonable strategic explanation for counsel's failure to object to Weisbrod's remote testimony and thus that counsel was deficient.

To demonstrate cause for his procedural default, Erkins must also show prejudice under *Strickland*, meaning that but for his counsel's failure to object to Weisbrod's videoconference testimony, he probably would not have been convicted of the second Weisbrod robbery. *See* 466

U.S. at 694.   Weisbrod's testimony described the robbery and identified Erkins as the perpetrator.   Besides Weisbrod's identification, there was no other direct evidence of Erkins's involvement in the second robbery of Weisbrod.   Unlike many of the other robberies for which Erkins was convicted, there was no video, telephone, or police-observation evidence linking Erkins with this victim on the night of this crime.   The only other testimony regarding this robbery was by the police officer who responded to Weisbrod's home that night, but that officer did not directly observe the crime or identify Erkins.   Given such limited evidence, if this case involved only this one robbery, Erkins would be correct that there was insufficient evidence to find him guilty without Weisbrod's testimony.

The record below, however, contains evidence supporting Erkins's other convictions, particularly his prior robbery of Weisbrod (which Erkins does not contest on federal review). That circumstantial evidence could have led a factfinder to find Erkins guilty of this charge.   The second robbery of Weisbrod matched the MO established by the evidence of Erkins's other convictions:   after winning a large sum of cash at the casino that Erkins frequented, Weisbrod was robbed by two black males with a gun upon his return home.   Furthermore, Erkins was convicted of robbing Weisbrod in a comparable manner less than two months earlier.   The evidence regarding the first robbery showed that Erkins knew where Weisbrod lived, knew he had won thousands of dollars in cash at this casino before, and knew that he had successfully robbed Weisbrod before.   The evidence for the first robbery did not itself depend on Weisbrod's testimony—a video recording showed Erkins following Weisbrod at the casino and Erkins's co-perpetrator, Amy Hoover, testified that Erkins committed that robbery.   Erkins's MO and his prior robbery of Weisbrod provided significant circumstantial evidence that could have permitted a rational factfinder to find Erkins guilty of the second robbery even without Weisbrod's

-11-

testimony. Erkins has not carried his burden to show a reasonable probability that, but for his counsel's failure to object to the admission of Weisbrod's video testimony, he probably would not have been convicted on this count. He has not shown prejudice.

Alternatively, a federal habeas court may consider a defaulted claim if failure to do so would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Such a miscarriage occurs only in the "extraordinary case," in which the petitioner can show that "'it is more likely than not that no reasonable juror would have convicted [defendant]' absent the claimed error or in light of new evidence." *Gall v. Parker*, 231 F.3d 265, 319–20 (6th Cir. 2000) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). On the record in this case, Erkins has failed to show that his conviction of the second robbery of Weisbrod was a fundamental miscarriage of justice.

Erkins defaulted his Sixth Amendment claim. Because he failed to show prejudice resulting from his counsel's deficient performance, we may not consider the merits of this claim.

### III.    CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Erkins's habeas corpus petition.[1]

---

[1]We note that the district court's conclusion that the Ohio robbery provision under which Erkins was convicted does not require proof of a weapon appears to conflict with Ohio courts' reading of that provision. *See State v. Wharf*, 715 N.E.2d 172, 174 (Ohio 1999) (analyzing the "deadly weapon element" of Ohio Rev. Code § 2911.02(A)(1)). However, Erkins did not raise this on appeal, and we decline to expand the certificate of appealability sua sponte for that issue.