[Cite as *State v. Ojile*, 2023-Ohio-4277.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230032 |
|  |  | TRIAL NO. B-1007149C |
| Plaintiff-Appellee, | : |  |
| vs. | : | *O P I N I O N.* |
| UGBE OJILE, | : |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  November 29, 2023


*Melissa Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Olawale Law Firm, LLC,* and *Emmanuel Olawale,* for Defendant-Appellant.

**BOCK, Judge**.

{¶1} Defendant-appellant Ugbe Ojile appeals the Hamilton County Court of Common Pleas' judgment denying his Crim.R. 33(A)(6) motion for a new trial on several charges related to Ojile's and his codefendant's participation in a string of robberies targeting casino patrons. In his motion for a new trial, supported by affidavits from his codefendant and a jailhouse informant, as well as a judgment entry of acquittal of one of the robberies charged under a different case number, Ojile now challenges four of his convictions: three for aggravated robbery and one for conspiracy to commit aggravated robbery.

{¶2} Because we hold that the common pleas court erroneously denied Ojile's motion for a new trial with respect to the aggravated robbery of Daniel[1] Duncan, we reverse the court's judgment in part and remand the cause for a new trial on that charge only. We affirm the lower court's judgment in all other respects.

### Facts and Procedure

{¶3} Following a 2011 bench trial, the trial court convicted Ojile of multiple counts of aggravated robbery, robbery, complicity to robbery, and conspiracy to commit aggravated robbery under two case numbers. At trial, the state submitted evidence demonstrating that Ojile and his codefendant, Kenyatta Erkins, had worked together to target patrons of two gambling casinos. Erkins would enter the casino and look for "targets" who had won large sums of cash while Ojile waited in a car in the parking garage. Once they acquired their targets, Erkins and Ojile would follow them from the casino to their residences and rob them at gunpoint. Amy Hoover, the mother of one of Erkins's children, participated in a few of these robberies.

---

[1] Daniel Duncan's first name has been spelled "Danielle" in other documents within the record, but we are following the spelling of his name as set forth in Ojile's indictment for this crime.

{**¶4**}   After this court's opinion on direct appeal and on appeal from the denial of Ojile's 2016 postconviction petition, Ojile stood convicted of four counts of aggravated robbery, five counts of complicity, and a single count of conspiracy in the case numbered B-1007149 and one count of robbery in the case numbered B-1006797C. *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-100678, 2012-Ohio-6015 ("*Ojile I*"); *State v. Ojile*, 1st Dist. Hamilton No. C-160425, 2017-Ohio-9319 ("*Ojile II*").

**The Trial**

{**¶5**}   The state tried Ojile and Erkins together. Hoover accepted a plea deal from the state in exchange for her testimony at their bench trial. She testified that she had only participated in three robberies and, thus, could only provide information as to those crimes. Tyrone Tanks, a jailhouse informant incarcerated with Ojile in the Hamilton County Justice Center, testified at trial that Ojile had confessed his involvement in several of the robberies for which he had been charged. Relevant to this appeal are Ojile's convictions related to the 2010 aggravated robberies of Michael Weisbrod, Daniel Duncan, Tien Dao, and Kiran Racheria.

<u>Michael Weisbrod</u>

{**¶6**}   Weisbrod was robbed twice. Because Ojile argues that his acquittal of Weisbrod's first robbery impacts his motion for a new trial related to the second robbery, we discuss both.

*Weisbrod's first robbery*

{**¶7**}   Ojile, Erkins, and Hoover were charged with robbing Weisbrod in February 2009. At trial, Weisbrod testified that he had left a casino on February 9, 2009, with more than $8,000 in cash and returned to his apartment in the early

3

morning hours of February 10. Video from the casino's security camera showed Erkins following Weisbrod that night.

{¶8} After Weisbrod had returned home, a woman knocked on his door and asked him if anyone was living in the apartment downstairs. Weisbrod told her, "No," and she left. On the night of February 10, a man came to Weisbrod's door, asked the same question, and received the same response. Then, Weisbrod testified, on the night of February 11, he was in the basement of his apartment building, checking for the cause of a power outage, when a man and woman confronted him, tied him up, and demanded to know where the money was in his apartment. The robbers left with Weisbrod's car keys, cell phone, and more than $8,000 in cash.

{¶9} Hoover testified at trial that she, Olije, and Erkins had participated in this robbery. Tanks testified that Ojile had provided him with a detailed account of this night and had said that he was not concerned with this charge because he had an airline ticket showing that he was in New York City at the time of the robbery. According to Tanks, Ojile also said that he had never boarded the flight and was going to use that airline ticket to create a false alibi.

{¶10} Ojile, Erkins, and Hoover were convicted of the 2009 robbery. But following postconviction proceedings, Ojile was acquitted of this crime after submitting an affidavit from a United Airlines record custodian attesting that Ojile had boarded the flights to and from New York City.

*Weisbrod's second robbery*

{¶11} In April 2010, Weisbrod was again robbed of a large sum of money upon his return home from a casino late at night. He testified that two men assaulted him on his front porch. They ordered Weisbrod to his knees and pointed a gun at him. After

4

taking his money, the attackers drove away in a white SUV. Weisbrod testified that he could see his attackers and had told investigating officers that he would be able to identify them if he saw them again. He explained that the porchlight had been on and the men were not wearing masks.

{¶12} About six months after the April 2010 robbery, police arrested Ojile, Erkins, and Hoover for a string of robberies. After the television news displayed pictures of the three suspects, Weisbrod contacted police to inform them that he recognized Hoover as the woman who had knocked on his door shortly before the February 2009 robbery. Further, during the police investigation and in court, he identified Ojile and Erkins as the two men who had robbed him in April 2010.

{¶13} The trial court convicted Ojile for the April 2010 robbery. Ojile now challenges this conviction in his motion for a new trial.

Daniel Duncan

{¶14} Duncan testified at trial that he was a "professional gambler" and that he had seen Erkins and Ojile together at a casino on several occasions. In April 2010, Duncan left a casino to return home to his apartment in the Oakley neighborhood of Cincinnati. Because he had been robbed before, Duncan was carrying a .40-caliber Glock in his back pocket as well as Smith and Wesson ammunition. After exiting from his car, a person he described as a six-foot man wearing a black hoodie and bandana pointed a gun at his head. Duncan stumbled and his own gun fell out of his back pocket. The single attacker stole Duncan's gun and ammunition and more than $1,200 before driving off in a white car.

{¶15} In October 2010, on the night when Ojile and Erkins were arrested, police searched the backpack located between Ojile's feet on the passenger-side

floorboard of the car that Erkins had been driving. Inside, they recovered Duncan's gun and ammunition as well as some of Ojile's personal papers.

{¶16} The jailhouse informant, Tanks, testified that Ojile had told him about a robbery where he had stolen the victim's gun. Ojile and Erkins were both charged with the aggravated robbery of Duncan. Ojile was convicted of this robbery and Erkins was acquitted. But in 2013, Erkins signed an affidavit attesting that he was solely responsible for Duncan's robbery.

### Tien Dao

{¶17} In June 2010, Dao returned home from a casino with winnings totaling $1,500. He parked his car in the driveway and opened his garage door. As he was entering his garage, a man wearing a black shirt and mask and brandishing a gun tried to grab him. A second man also wearing a mask and brandishing a gun arrived. One of the men hit Dao in the head with a gun while he was trying to escape inside his home. The two attackers followed him inside and stole Dao's wallet and fled. Dao had his social security card, a California driver's license, and credit cards in his wallet. Surveillance video showed Erkins following Dao as he left the casino earlier that night. Additionally, Dao's 16-year-old neighbor across the street saw, from his bedroom window, two men attacking Dao in his garage and called the police.

{¶18} Following Ojile's arrest, police officers searched the apartment Ojile shared with his girlfriend and recovered Dao's California driver's license, social security card, and credit cards from the top of a kitchen cabinet. Ojile's girlfriend testified that Ojile often kept his keys and wallet on top of the kitchen cabinet.

**{¶19}** Tanks testified at trial that Ojile confessed to being involved in the Dao robbery and said that he was going to claim that a police officer named Morgan had planted Dao's personal effects in Ojile's apartment.

**{¶20}** Ojile, Erkins, and Hoover were all charged with Dao's aggravated robbery. The trial court convicted Ojile and acquitted Erkins. Although she did not testify about this robbery at trial, Hoover entered a guilty plea to this crime and was convicted.

<u>Kiran Racheria[2]</u>

**{¶21}** In the early morning hours of October 3, 2010, Kiran Racheria returned to his apartment complex in Blue Ash after winning at a casino. He became alarmed when he saw a man emerge from behind a tree. Racheria woke up his friend, who had been sleeping, and the two of them exited from the car. Racheria attempted to call 911 from his cell phone. His friend attempted to open the apartment door, but was having trouble, so he ran away and left Racheria alone.

**{¶22}** At that point, a man wearing a dark mask and hood, who was brandishing a gun, ordered Racheria to sit on his knees. Racheria refused and said that the police were coming. Upon hearing a siren, Racheria tried to flee but the attacker struck him three times with the gun and threatened to shoot him. The attacker put his hand in Racheria's left pants pocket, pulled out his cell phone headset, threw it on the ground, and fled. After the police arrived, paramedics took Racheria to the hospital because of a large gash on his head.

**{¶23}** Surveillance tapes showed Erkins following Racheria as he left the casino that night. And cell phone records showed that Ojile was in the Blue Ash area

---

[2] Racheria's name has been spelled Racherla in other documents within the record, but we are following the spelling of his name as set forth in Ojile's indictment for this crime.

the night of the attack. A few days later, police arrested Ojile and Erkins for these robberies. Police found Duncan's gun in Ojile's backpack. The gun had Racheria's DNA on it. As a result of this crime, Erkins was found guilty of felonious assault and aggravated robbery, but after merger of the offenses, he was convicted of aggravated robbery. Ojile was convicted of conspiracy to commit aggravated robbery.

**Motion for New Trial**

{¶24} In September 2021, after this court concluded that the trial court should have granted Ojile leave to file his motion for a new trial because he had been unavoidably prevented from discovering the evidence supporting his motion, *see State v. Ojile*, 1st Dist. Hamilton No. C-200340, 2021-Ohio-2955 ("*Ojile III*"), Ojile filed his motion for a new trial based on newly discovered evidence. In the motion, Ojile challenges his convictions for the 2010 aggravated robberies of Weisbrod, Duncan, and Dao as well as his conviction for conspiracy to commit aggravated robbery, which involved Racheria.

{¶25} In support of his motion, Ojile submitted (1) Tanks's August 2018 affidavit, which recanted his testimony against Ojile at trial and admitted that his plea agreement with federal authorities contained a "sealed supplement" guaranteeing him a substantial reduction in his federal sentence in exchange for his assistance in other cases; (2) Erkins's December 2019 affidavit in which he implicated himself in the Duncan and Racheria robberies, attesting to Ojile's innocence in those crimes by admitting that he had planted Duncan's gun in Ojile's backpack, and, with respect to the Dao robbery, claimed to have been in possession of Dao's California driver's license, not Ojile, and was "shocked" when the officer at trial testified that Dao's identification cards were recovered from Ojile's apartment; and (3) the judgment entry

8

acquitting Ojile of the 2009 Weisbrod aggravated robbery. Following oral arguments on Ojile's motion, the common pleas court denied Ojile's new-trial motion.

**{¶26}** In its decision, the common pleas court found that Erkins's affidavit was not "newly discovered evidence" and was not credible. It indicated that it was giving the affidavit no weight. But then the court seemed to retreat from its credibility finding and considered Erkins's statements, concluding that Erkins's admissions about the evidence linking Ojile to the robberies—planting Duncan's gun in Ojile's backpack and being the one who was in possession of Dao's identification cards—merely contradicted the evidence presented at trial.

**{¶27}** With respect to Tanks's affidavit, the court found that it suffered from credibility issues because Tanks had waited to submit the affidavit until after he had received the "benefit of case consideration" per his plea agreement with federal authorities. But the court then found that even taking Tanks's statements in his affidavit at face value, they failed to disclose a strong probability that a new trial would change the result. Additionally, the court noted that the testimony Tanks now says was fabricated—that Ojile had stolen a gun from a robbery victim, that Ojile was going to create a false alibi in the 2009 Weisbrod robbery, and that Ojile had confessed involvement in the Dao robbery—had been detailed and comported with other evidence at trial.

**{¶28}** Finally, the court rejected Ojile's argument that the judgment acquitting him of Weisbrod's first aggravated robbery justified a new trial on Weisbrod's second robbery. It noted that the 2010 conviction had been based on Weisbrod's identification of Ojile and Erkins as the men who had robbed him, rather than on Tanks's or Hoover's testimony.

9

**Law and Analysis**

**{¶29}** Ojile asserts in a single assignment of error that the trial court abused its discretion in denying his motion for a new trial.

**{¶30}** We review a lower court's decision to deny a new trial on grounds of newly discovered evidence under an abuse-of-discretion standard. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 85. A motion for a new trial in a criminal case, based on newly discovered evidence, is warranted where the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

**{¶31}** In this appeal, the parties focus on the first and sixth *Petro* factors, and no one explicitly contests that the other *Petro* factors had been satisfied, including that the new evidence was material to the issues at hand, not merely cumulative to former evidence, and had been discovered since the trial.[3]

**Judgment Entry Acquitting Ojile of the First Weisbrod Robbery**

**{¶32}** Ojile submitted the judgment entry acquitting him of the 2009 robbery of Weisbrod in support of the portion of his new-trial motion involving Weisbrod's

---

[3] We note that the common pleas court found that Erkins's affidavit was not "newly discovered evidence." But under the law-of-the-case doctrine, the common pleas court is required to follow a reviewing court's decision on a matter in the same case. *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, ¶ 14-16. Here, this court, in *Ojile III*, held that Ojile had been unavoidably prevented from discovering the new evidence underlying his motion for a new trial, which included Erkins's affidavit. *Ojile III*, 1st Dist. Hamilton No. C-200340, 2021-Ohio-2955, at ¶ 19. Thus, the lower court did not have the authority to disregard this court's holding and determine that Erkins's affidavit was not newly discovered evidence. Regardless, the lower court did consider Erkins's affidavit and determined it did not satisfy two of the *Petro* factors.

2010 aggravated robbery. He argues that his acquittal in the first robbery renders Weisbrod's in-court identification of him as one of his attackers in the second robbery unreliable. In support, he relies on the Sixth Circuit decision in *Erkins v. Chuvalas*, 684 Fed.Appx. 493 (6th Cir.2017), where the court reviewed the district court's denial of codefendant Erkins's habeas petition. In addressing whether the state prosecutor's display of a photograph of Erkins to Weisbrod was impermissibly suggestive and rendered Weisbrod's in-court identification unreliable, the Sixth Circuit held that although the state court should have analyzed the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), as to the reliability of the identification, it ultimately determined that:

> The circumstances here are not so one-sided that it was objectively unreasonable for the Ohio courts to conclude that Weisbrod's identification was reliable. The Ohio courts' conclusion that Weisbrod's testimony was reliable is buttressed by the fact that he identified Amy Hoover as the person who knocked on his door (related to the first robbery), and Hoover confessed to doing so, indicating that other parts of Weisbrod's recollection of the robberies were accurate.

*Erkins* at 498.

{¶33} Here, we cannot say that the common pleas court abused its discretion in denying a motion for a new trial with respect to Weisbrod's second robbery. Given that Weisbrod did not himself identify Ojile as participating in the 2009 robbery, and considering the totality of the evidence, the entry acquitting Ojile of the 2009 robbery does not affect Weisbrod's identification of Ojile as one of his attackers in the 2010 robbery. Weisbrod testified that he could view Ojile during the 2010 robbery because

the porch light had been on and Ojile had not been wearing a mask. And Weisbrod testified that he had told investigators specifically that he would be able to identify the two men who robbed him in 2010.

**{¶34}** Weisbrod's recollections of both robberies appear to have been accurate, as the federal appellate court pointed out, where Weisbrod had correctly identified Hoover as the woman who had knocked on his door the day before the 2009 robbery. Further, Weisbrod never testified that two men had robbed him in 2009; instead, he testified that one man and one woman had robbed him, it had been dark, and he could not see them. Considering (1) Weisbrod's testimony at trial regarding both robberies; (2) the fact that Hoover, who seems to have falsely testified about the 2009 robbery, did not testify about the 2010 robbery; and (3) this court's holding in Ojile's direct appeal that Weisbrod's pretrial and in-court identification of Ojile as one of the attackers in the 2010 robbery was reliable, *Ojile I*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, at ¶ 78, we hold that Ojile has not demonstrated that the judgment entry acquitting him of the 2009 robbery discloses a strong probability that a new trial on the 2010 robbery would yield a different result.

**Tyrone Tanks's and Kenyatta Erkins's Affidavits**

**{¶35}** Ojile submitted Tyrone Tanks's and Kenyatta Erkins's affidavits in support of his new-trial motion involving the remaining three counts. We note that despite the common pleas court's finding that the affidavits were not credible, the court considered both affidavits at "face value" and thus, we do the same.

**{¶36}** As an initial matter, while we will consider the impact of Tanks's specific recantations of his trial testimony with respect to each robbery, we hold that the plea agreement with federal authorities guaranteeing Tanks a reduced federal sentence in

exchange for his testimony against Ojile does not disclose a strong probability of changing the result if a new trial is granted. At trial, defense counsel cross-examined Tanks regarding a deal with federal authorities and Tanks testified that he was "hoping" for a reduction in his federal sentence in exchange for his testimony against Ojile. Thus, even though the trier of fact was unaware that Tanks's reduction in his federal sentence was *guaranteed*, and not merely *hoped* for, it was aware that Tanks had an agreement in place with federal authorities and was able to evaluate the testimony accordingly.

Duncan Robbery

{¶37} Ojile argues that Erkins's affidavit—Erkins admitted that he alone was responsible for robbing Duncan and that he had placed Duncan's stolen gun into Ojile's bag shortly before they were arrested—discloses a strong probability that a different result would be reached if a new trial was granted on this charge. We agree.

{¶38} Only Ojile was convicted of the Duncan aggravated robbery because police found Duncan's gun in Ojile's backpack. There was no video surveillance showing anyone following Duncan at the casino and there were no cell phone records demonstrating that Ojile had been in the Oakley area the night Duncan was robbed. The gun was the only piece of evidence tying Ojile to Duncan's robbery. Additionally, Tanks now attests that Ojile did not confess that he had participated in a robbery where the victim's gun was stolen, and instead, had told Tanks that the gun that was found in his backpack must have belonged to Erkins.

{¶39} In determining that the new evidence discloses a strong probability of a different result, we keep in mind that while Ojile has not disputed that his backpack was in Erkins's car, he has consistently maintained his innocence in the Duncan

robbery. And, as early as 2013, Erkins admitted that he was solely responsible for the robbery. This admission comports with evidence presented at trial that Duncan was robbed by one man, and that the gun stolen from Duncan was then used in the Racheria aggravated robbery for which Erkins had been found guilty, not Ojile. Ojile and Erkins were not arrested for this string of robberies until a few days after the Racheria robbery. Erkins would have had the opportunity to place Duncan's gun in Ojile's backpack either the night they were arrested or the day before, when they were seen together in a car, following a potential robbery victim from the casino.

{¶40} Based on the foregoing, we hold that the common pleas court abused its discretion in determining that the statements in Erkins's and Tanks's affidavits failed to disclose a strong probability of a different result if a new trial is granted on the offense of the aggravated robbery of Duncan. Accordingly, we reverse the lower court's judgment with respect to that count and remand the matter for a new trial on that count only.

Dao Robbery

{¶41} Turning to Dao's aggravated robbery, Dao and his neighbor both testified that two men had robbed him at gunpoint upon his return home from the casino. These facts comport with the footprint of Ojile and Erkins's other robberies. There was also video surveillance showing Erkins following Dao at the casino. In arguing for a new trial on this count, Ojile points first to Erkins's affidavit, in which Erkins claims that Dao's identification documents were in the glove box of his car and that he was shocked when he heard testimony at trial that Dao's documents were found in Ojile's apartment. Next, Ojile points to Tanks's affidavit, in which he attests that Ojile had not confessed involvement in this crime but had merely told Tanks that

14

he believed officers planted Dao's license in his apartment. But this evidence fails to disclose a strong probability of a different result if a new trial were granted.

**{¶42}** First, Erkins did not specifically attest to Ojile's innocence in this crime (and this comports with Dao's testimony that he was robbed by two men). Rather, Erkins only attested that Dao's documents had been in Erkins's glove box and therefore, officers must have planted Dao's driver's license and other items in Ojile's apartment. Second, Erkins's admission that Dao's documents were in his glove box merely contradicts the police officer's testimony at trial that Dao's driver's license had been found in Ojile's apartment on top of a kitchen cabinet, where Ojile's girlfriend testified that he normally kept his wallet and keys. Accordingly, we cannot say that the common pleas court abused its discretion in denying Ojile a new trial on this count.

<u>Racheria Robbery</u>

**{¶43}** Ojile submits Erkins's affidavit only (Tanks did not testify about this crime at trial) to support his motion for a new trial involving his conviction for conspiracy to commit aggravated robbery. Although Erkins has now admitted to robbing Racheria, which is in line with his recent admission that he had stolen Duncan's gun, his new testimony does not change the fact that this robbery fit the footprint of his and Ojile's other convictions. There was surveillance video showing Erkins following Racheria out of the casino and cell phone data placing Ojile in the Blue Ash area at the time of the crime. Given this other evidence, Erkins's admission that he had robbed Racheria does not disclose a strong probability of a different result if a new trial were granted. Thus, we hold that the trial court did not abuse its discretion in denying Ojile's motion for a new trial on this count.

**{¶44}** Based on the foregoing, we sustain in part and overrule in part Ojile's single assignment of error.

15

## Conclusion

{¶45} Because we hold that the lower court abused its discretion in denying Ojile's motion for a new trial with respect to the count related to the aggravated robbery of Daniel Duncan, we reverse the common pleas court's judgment in part and remand the cause for a new trial on that count only. We affirm the lower court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**BERGERON, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.